Mr. Macy. Good morning, your honors. May it please the court. My name is Jeff Macy. I'm here for the appellant, Mark Shell. Mr. Shell was a 12-year employee of the City of Anderson Transit System. He worked as a mechanic helper. The City of Anderson Transit System runs the bus services for the City of Anderson in Indiana. Mr. Shell is disabled. He has hearing and vision impairments and there's no dispute over whether he's disabled. The issue in this case is that his disability precludes him from obtaining a commercial driver's license and there's no dispute in this case whether that's true. During the 12 years that he had the job of mechanics helper, who moved the buses when they needed to be moved? When they need, there's two ways buses need to be moved. They need to be moved on the lot and you don't need a commercial driver's license to do that. Now Mr. Shell didn't do that but there are mechanics on the lot that move them, but he has a regular operator's license. The mechanics move them out when they needed to be driven on public roads and the only thing that Mr. Shell could not do was drive a bus on a public road. His supervisor, Mark Bowger, testified in his declaration that what Mr. Shell would do was when people had to move the bus, if they had to go on a public road, it had to be delivered to a repair shop or back to the manufacturer or brought from the manufacturer, Mr. Shell would drive his own car. The street supervisor or another driver or the mechanic or somebody else who did possess a commercial driver's license would drive the bus itself. And importantly, there's no evidence in this case that that ever caused any problem for the City of Anderson Transit System. In fact, the testimony from the decision-maker, Mr. Blackwell, who took over and terminated Mr. Shell, was not that there was a problem or that he'd reviewed the job. It's simply that he looked at the job description and discovered Mr. Shell did not have a commercial driver's license. So it's the plaintiff's position then that because driving the bus was not an essential function of the mechanics helper position, that is so notwithstanding the definition of what that position was. Well, I think, yes, our position is that the job description itself is only one of a number of factors and that position is consistent with the federal regulations that have been adopted and applied repeatedly by this court, most recently in the Kauffman case. But even if the job description is dispositive, I'd just like to direct you to the job description. The duty, it just says duties, it doesn't say essential functions, it says may occasionally drive and deliver buses to various field locations. That's, in my mind, that's doubly qualified. This may happen and it may happen only occasionally. But in this situation you can't have it at all, right? He can't do it. That's true. But I think when you apply the test that the court's supposed to apply and the federal regulations asked to apply, the best evidence of whether this was an essential function is how the job was performed for the prior 12 years. And for the prior 12 years, he never did it. And there's no evidence that he needed to or there was any kind of request that he needed to do in order to ensure the smooth operation of the city of Anderson transit system. I think that is the fundamental distinction between this case and the three cases the district court relied on and the city relies on here on appeal, and that's the Basith case, the Winfrey case, and the Gratzel case. In each of those cases, well specifically Basith and Winfrey, the employer was attempting to accommodate someone who had become disabled on the job and was moving them through a series of positions or a series of limited assignments. At the end of the day, I think in those cases, the employer said, look we just we can't do it. We can't do it. And then the plaintiff said, well wait a second for two weeks or you had me over there and I was a clerk. It turned out I couldn't do any clerk duties, but I was a clerk. Can't I just be a clerk? Well, in this case, my client worked there for 12 years. It's not that they were bending over backward to accommodate him. He was the mechanics helper for the majority of that time on day shift, right? He was the guy. Did they operate out of a central garage? They operate out of a central garage. Were there any other personnel at that garage that had the requirement that they be able to drive buses? Yes, mechanics did. The mechanics themselves, as well as the street supervisors. And actually, the Director of Operations also held a commercial driver's license. I'm talking about in a job description. Yes, yes. I think even up to the Director of Operations, I'm not sure. What happens in the city of Anderson is that most people come in as a part time bus driver. So almost everybody who starts there comes in as a part time bus driver or a direct driver himself and then sort of moves up the chain. Most of them keep their CDLs. Mr. Schell did not come in as a part time driver. He was specifically asked to take over the position by the previous general manager who'd been there years and reported to a Director of Operations who had also been there years. And both of them testified that Mr. Schell performed all the essential functions of the job. To find that he didn't is to sort of make this job description itself dispositive. And that's an incorrect application of the factor test. In addition to the fact that I don't think the job description itself is that clear that this is actually an essential function of the job. There was some sense, I think, in the district court and in the arguments that this was a special favor for Mr. Schell that they made him a janitor, they didn't need a janitor. Frankly, I think those were inferences that were drawn from testimony where people, including the previous Director of Operations, the previous general manager, and the appellant himself, about okay, what did you do? When they were describing the and saying these functions, you know, basically you're spending a lot of your time cleaning. You clean the buses, you clean the grounds, you mow the lawns, you clean the toilets. If there's an accident, he would have to, like a vomiting accident, not a car accident, he would go clean that up. He was the guy that did that. That doesn't mean that they created in 2000 a special assignment for him. He was hired as a mechanic helper because he could perform, in the minds of supervisors, the duties of the mechanic helper. I'll wait for a rebuttal. Thank you. Thank you. Mr. Overholt. Good morning. Before I begin my argument, I want to address a question that was directed by you, Judge Roepner, about the CDLs and who drives the buses. I believe Mr. Macy said that a CDL was not required to operate the buses around the area. I don't think the city immediately disagrees with that. It is the city's position that, at least their understanding of the commercial driver's license requirements, are that in order to operate that bus, whether it's on the lot or on the road, you have to have a CDL. Well, here's what I can't at all understand, is why this case isn't a He performed this job for 12 years without needing a commercial driver's license. Couldn't he have been accommodated by having someone else move the vehicles the very few times that they needed to be moved? Your Honor, I completely disagree with your premise that he performed the job of a mechanics helper for 12 years. He did not. Really? And so for 12 years, you're all just Here's what happened, Your Honor. There was a grievance filed regarding Mr. Schell and his ability to perform the job. There was, as a resolution of that grievance, a new job description that was prepared that eliminated the essential function of operating vehicles and having a CDL. Right. It was a job description that applies to him. Specifically to him. Right. So it is, this case is exactly like Winfrey and Basseth, where there were special accommodations made for him, but these accommodations went far beyond what the ADA requires, because it eliminated an essential function, which was the job. What evidence is there that moving the commercial vehicles was, in effect, essential part of the job? There are several. First, you seem to be arguing that it was an essential part of the job because the job description required it, and that seems very circular. There are. Because the job description says, may occasionally, may occasionally drive and deliver buses. Aren't the words may and occasionally a concession in and of itself that it's a non-essential function? As to your last point, the terms may are not a concession at all. They simply refer to the fact that there's something that happens occasionally. It is not something that the employee has to do all the time, but we know from Basseth and from other cases decided by this Court, including Gratzel, that whether or not something is performed frequently is not dispositive of whether it's an essential function. Instead, if it goes to the core function of what a business or a company does, then it could be essential, even though it's performed infrequently. Here, we're talking about a bus company, and all the employees for this bus company have to have a CDL because sometimes they all have to operate buses. Now, in terms of this notion of the job description or my argument being circular, I could not EEOC defines, helps provide a test. They provided a list of factors that are considered. The two factors that come first are what the job description says and the judgment of the employer, and we know that this Court in Basseth and Gratzel and other cases specifically has held that those are the two most important factors in deciding whether something is an essential function. Now, again, I don't disagree that Mr. Schell was accommodated for a long period of time, but the fact remains that the other mechanics helper who didn't have this change on his job description had to perform this essential function of operating commercial vehicles. In addition to moving them around a lot, there are a lot of other duties that went along with being able to perform those other functions as well, things that Mr. Schell just couldn't do because of his disabilities. So, I think, based upon this Court's decision in Basseth, based on Gratzel, I just don't see any evidence that this is something other than an essential function. In essence, their only piece of evidence that the plaintiff has in this case is, well, he did the job without it for 12 years. Well, I didn't see any evidence of why he couldn't be someone else move buses on the rare occasion that they have to be moved, because if it was such a burden for 12 years that he worked, there ought to be evidence of this, and the city ought to have provided that evidence. Well, the city provided evidence in the form of the affidavits of Rick Garrett and Addie Rooker. First, Rick Garrett was the, I can't remember his exact title, he was essentially one of the directors of CATS, who stated that having a CDL for a mechanics helper was an essential function. In addition, the city hired an outside consult to prepare all the city's job descriptions for years. That system is explained in detail in the briefs and was explained in depth on the brief. That process required multiple steps and had the outside consultant examine the actual job performed by each employee and city government to determine what the essential functions, job responsibilities, and duties were. Part of that process, and this is also in the brief, had the employee and the employee supervisor sign off that those essential functions and duties were in required as part of the job. So, I disagree, Your Honor, that that evidence is not in the record. It's right there in the form of the affidavits from Addie Rooker and Rick Garrett. Mr. Overholt, is it the fact that we're even talking about these factors and these factual discrepancies, doesn't it lend itself to looking at this decision that it should have been one put in the hands of the jury to in the mechanic helper's position? We're talking about a time period of 12 years? No, Your Honor. We're talking about comparison with another helper mechanic? Why aren't those matters for a jury to hash out at trial? Because this court, in other cases under similar situations, have found that these are cases appropriate for summary judgment. Twelve-year, have you got a case where someone held a job for 12 years? No. I couldn't find any. I believe that those cases, none of them were more than a few months or a few weeks. I believe Gratzel and Basseth were both longer than a series of months or weeks. But anything that approximates 12 years? Your Honor, the City of Anderson is funded by tax dollars. When you have a governmental entity that is trying to perform a service for the taxpayers, in this case providing bus service, it has to do so as economically as it can. That means that employees have to be able to perform functions that go with their jobs. The fundamental fact in this case that is not disputed by anybody is that Mark Schell could not do the job of a mechanics helper. He couldn't do a whole host of functions associated with that job. Now, where's the evidence of that? Well, I certainly missed it. The CDL. What were the other functions that he failed to accomplish other than not being able to drive the bus? If you go back and look at I think Mr. Schell himself on summary judgment acknowledged that he could perform very few of the functions listed in his job description. Now, I agree that was not the reason for his termination. He was terminated because he did not have a CDL, which was an essential function of the job. I'm just pointing out to you that his inability to have a CDL impacted his ability to do a whole host of functions. His disabilities impacted a whole host of functions in his inability to perform. Now, in the response to summary judgment, I believe it's on pages 12 through 15 where that issue is addressed. But it's my understanding in the history in his employment record there were no write-ups or warnings or issues presented during that 12-year period of time. There were not. That would have put him on any notice that that was still and the question is, if I may finish, the question is assuming that this is an essential function, which again the city asserts that it is based upon Gratzel and Basseth and the other cases we cited. If that's an essential function, there is no case from this circuit that says if you're in that job too long it's no essential function. In other words, that once you go beyond what the ADA requires by accommodating an employee for a long time, you lose the ability to say that's an essential function. Every decision by this court has said that is not the law. Van Zandt specifically says we don't want to put employers in that situation because to do so will discourage employers from going beyond the ADA's minimum requirements and allowing employees, it will discourage employers from accommodating employees. We don't want to do that. This court has said that time and time again. That's really what we're talking about here. Well if it was an economic decision, if they had to hire other people, would have to or at least require other employees to do it, what would that have taken? We don't, I don't want to characterize it as needing to hire other people. I rephrase it, ask somebody else. Here's an example. Let's say that a bus breaks down out on the street. If this happens on a shift that's not marked shell shift, mechanics helper will be one of the people who goes out, gets that bus, and either helps the mechanics bring it in or helps transport passengers or does whatever needs to be necessary to deal with that accident. How many mechanics helpers fall under this same job description? He's the only one. The other mechanics have to drive too. They have to have a CDL to drive the buses around as well. I'm sorry, I didn't hear you. You're mechanics? Yes. Correct, so it's a combo. Okay, so it would be a mechanic that would go out and do it, not a mechanic's helper. That's right, and so the mechanic can't do the work that he needs to be doing in the garage. In other words, here's the fundamental point about all that. This work of driving the buses and be done by somebody. His job is to be able to do that, and that work cannot be left undone. Therefore, it is essential. It has to be done, and the judgment of the employer is the mechanics helper position is one of the positions that has to be able to do it. This is not a situation where the company can simply say, yeah, we're just not going to do that. We're just going to leave that function undone. It has to be performed, and the judgment of the city is mechanics helpers have to be one of the employees, one of the categories of employees that do this work. Thank you. Thank you, Council. How much time? You have three minutes left. I'll give you another minute. Okay, thank you. I just want to address Mr. Overholt's point that 12 years, there is no line, but if you look at the test, it's asking not for the number of years, but it's asking how the job has been performed, and the best evidence in this case is how it was performed for 12 years. Mr. Schell, I think there's a question about whether the buses were moved around the lots. Our position, for purposes of litigation, is that he could do it. There's a dispute, but that doesn't really matter to this case because Mr. Schell worked on day shift. That's the time when the buses went out. Mr. Schell never had to move them when they came back in, so I don't think that's the point. But if you look at the test, it's seven factors. The work experience of past incumbents in the job and or the current work experience of incumbents in similar jobs, the consequences of not requiring an incumbent to perform the function, the amount of time spent on the job performing the function. Those are four things that Mr. Schell's experience in the role is evidence of. The time spent on the function, Mr. Schell's case, never. The consequences of not being able to perform the function for 12 years, Mr. Schell, there's no evidence of any economic hardship. In fact, I mean, employers have an undue hardship defense to the Americans with Disabilities Act. That's a point where you get in when you're talking about a reasonable accommodation. In this case, they're trying to jump out of the reasonable accommodation process by asserting that this is an essential function of the job. Because it's undisputed that when he was terminated, he was told, look, the job description requires it, you don't have it. Isn't it correct, too, that when he was hired in, that 12 some years when he was hired in, that that job description was in place and included the CDL requirement? Yes, Your Honor. So he was hired in notwithstanding that? Notwithstanding, it had been in place for eight years. There's a lot of testimony about how the job descriptions were created, but at the end of the day, the job description, and as Judge Rivner pointed out, is heavily qualified as it is, is one element of it. The other element is the employer's judgment. Well, in this case, we have a judgment that's been asserted in litigation, but it's not the employer's litigation position as to which elements are essential. You have to look at the testimony of the people who were Mr. Schell's, the decision makers about Mr. Schell's employment, and that was the general manager who hired him, the director of operations under whom he worked, and the general manager who terminated him. And there's no testimony from any of them, even the general manager who terminated him, that we were having problems, we needed Mr. Schell out on the road. Mr. Schell was terminated the day after the general manager took over. General manager had no transit experience. The general manager didn't speak to Mr. Schell's supervisors. The testimony was simply that he looked at the job description and made the decision based on that to terminate Mr. Schell. Was there a change in party affiliation for them? Yes, but Mr. Schell had previously survived the previous change. But this was a change in mayor? This was a change in mayor. He had worked successfully under the mayor in the previous administration. During that time, he had had that specific job description changed for him, and he had also been named Employee of the Month during a previous administration. So, I don't think this was... No, but I'm just saying that was the fact. Yes, yes, the... I think that Mr. Schell's performance and the testimony of his supervisors, and the 12 years he worked, are all pieces of evidence from which a fact finder could determine this. We're not just saying 12 years, 12 years, 12 years. 12 years is part of the overall picture. Thanks very much. Thank you, counsel. Thanks to both counsel. The case was taken under advisement.